```
               UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                   JACKSONVILLE DIVISION
```

MELANIE WILLIAMS,

                Plaintiff,

v.                                    Case No. 3:06-cv-686-J-33MCR

MATTHEW SIRMONS, JAMES MILLS, and SHERIFF JOHN RUTHERFORD of the Jacksonville Sheriff's Office,

                Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to two motions for summary judgment, one filed by the defendant police officers on February 25, 2008, (Doc. # 15), and the other filed by the defendant sheriff on February 28, 2008, (Doc. # 18). Williams filed a response to each (Doc. # 23; Doc. # 24). For the reasons that follow, summary judgment is granted in part and denied in part. Specifically, the Court grants summary judgment for the sheriff on Williams' § 1983 claim, and denies summary judgment on all remaining claims.

**I.    Background**[1]

On May 8, 2005, Melanie Williams, then seven and a half months

---

[1] There is record evidence supporting each fact recounted. Because the questions raised by the defendants' motions for summary judgment are primarily legal, though, the Court does not describe in detail the nature of all factual disputes or the competing evidence supporting each side in these disputes.

pregnant with her first child, was arrested on various charges stemming initially from a traffic stop made by Officers Sirmons and Mills.  Force was used in the arrest, and both Williams and Officer Sirmons were injured.

The incident began when Williams observed bleeding that appeared to indicate something was wrong with her pregnancy.  (Doc. # 23, at 1.)  She got in her car and began driving herself to the hospital with which her obstetrician had a relationship.  (Doc. # 23, at 2.)  En route, she dialed 911.  (Doc. # 23, at 2.)  The 911 operator asked if she wanted to pull over and await an ambulance, but Williams declined because she believed she would make it to the hospital sooner by continuing on by herself.  (Doc. # 23, at 2.)

It appears Williams ran a red light on her way to the hospital.  Sirmons and Mills, riding together in Sirmons' patrol car, signaled Williams to stop.  She did so, and this was less than a mile from the hospital (Doc. # 28-2, at 29 (Williams Depo. at 111)).  Sirmons approached the driver's door of Williams' car.  According to Williams, she told Sirmons through the window that she was pregnant, bleeding, and on her way to the hospital.  (Doc. # 23, at 3.)  According to Sirmons and Mills, Williams never said anything about being pregnant.  Despite this, Sirmons testified in his deposition that he "offered her rescue assistance" (Doc. # 28-4, at 31 (Sirmons Depo.)), but that Williams declined (Doc. # 28-4 at 32 (Sirmons Depo.)).  Williams testified in her own deposition

2

that Sirmons did not offer her rescue assistance. (Doc. # 28-2, at 25 (Williams Depo. at 95).) Instead, he requested her drivers' license and proof of insurance, and inquired whether Williams owned the car she was driving. (Doc. # 28-2, at 24-25 (Williams Depo. at 93-96).) Sirmons returned to his patrol car with these documents in hand, and Williams drove off for the hospital.

Williams drove directly to the hospital's emergency vehicle bay with Sirmons and Mills close behind. As Williams alighted, Sirmons grabbed Williams' arm and told her she was going to jail. (Doc. # 28-2, at 26 (Williams Depo. at 99).) Williams pulled free and ran into the emergency room yelling, "help, I'm pregnant and bleeding." (Doc. # 28-2, at 26 (Williams Depo. at 100).) According to witnesses who were waiting in the emergency room at the time, Williams stopped at two locked doors in the emergency room, still begging for help. (Doc. # 28-6, at 2; Doc. # 28-7, at 2.) Just then, Sirmons jumped on Williams and slammed her to the floor, dislocating his shoulder in the process. (Doc. # 28-6, at 2; Doc. # 28-7, at 2.) Sirmons got up, and Mills took Sirmons' place, kneeling atop the prone Williams while he handcuffed her. (Doc. # 28-6, at 2-3.) All the while, Williams pleaded with the officer to get off her stomach because she was pregnant. (Doc. # 28-6, at 3.)

Sirmons and Mills describe this scuffle in the emergency room differently. According to them,

3

>Officer Sirmons managed to catch up with [Williams] and again attempted to take her into custody. However, [Williams] continued to resist Officer Sirmons. As Officer Sirmons attempted to grab hold of her upper body, [Williams] immediately went to her knees, causing Officer Sirmons to lose his balance and fall. As a result of the fall, Officer Sirmons dislocated his right shoulder.

(Doc. # 15, at 5 (citations omitted).) At that point, Mills took Williams into custody using a "softball" handcuffing technique, which required him briefly to shift part of his weight onto her. (Doc. # 15, at 5.) Only after she was handcuffed did Williams first say she was pregnant. (Doc. # 15, at 5.)

There is no disagreement that Mills next took Williams to the patrol car where she was examined by a nurse from the hospital.[2] Williams was admitted to the hospital and found to be bleeding and in premature labor. Her physicians "successfully staved off the premature labor," and Williams was released from the hospital on May 18. (Doc. # 23, at 6.) "Her child was born on June 1, several weeks premature." (Doc. # 23, at 6.) The sheriff disciplined Sirmons and Mills for misconduct.

Williams sued Sirmons and Mills for excessive force under 42 U.S.C. § 1983, and for malicious prosecution under state law. Williams also sued Sheriff Rutherford in his official capacity for failing to train Sirmons and Mills under § 1983, and for false

---

[2]Williams explained that Mills only allowed the nurse to examine her after the nurse <u>insisted</u> on performing the examination. (Doc. # 23, at 6.) Sirmons and Mills, by contrast, say that they never interfered with Williams' post-arrest care. (Doc. # 15, at 6.)

arrest and battery under state law.  Sirmons and Mills now argue that they are entitled to summary judgment because they benefit from qualified immunity.  Specifically, they submit that they had probable cause -- or at least arguable probable cause -- to arrest Williams.  Additionally, the force they used to arrest Williams was not unreasonable.  Sheriff Rutherford joins in these arguments, but adds also that the sheriff is not liable under § 1983 even if the officers themselves are.  This is because the sheriff was not a moving force behind the actions of the officers.

**II. Standard of Decision**

The Court should render summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc.,

64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment." Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

**III. Discussion**

    **A.   Malicious Prosecution Count Against Officers Sirmons and Mills**

Sirmons and Mills argue that they are entitled to summary judgment on Williams state-law malicious prosecution claim against them. They correctly note that absence of probable cause is an element of a malicious prosecution claim under Florida law. See Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004) (explaining that Florida law requires absence of probable cause as an element of the tort of malicious prosecution). They then submit that they had probable cause to arrest Williams for driving away from the initial traffic stop, which is itself a felony under

section 316.1935, Florida Statutes.[3]

Williams counters that a reasonable jury could find Sirmons and Mills did not have probable cause in this case. (Doc. # 23, at 19.)  Apparently, this is because Williams would have had a necessity, or even self-defense, defense to prosecution for driving away from the initial traffic stop.  (See Doc. # 23, at 9 (suggesting that Williams' purportedly criminal actions may have been subject to a claim of self-defense).)  And the officers knew sufficient facts from which they could determine that Williams' actions, though on their face criminal, were actually justified.

Sirmons and Mills indeed observed sufficient facts to give rise to probable cause to believe Williams was engaged in criminality.  There is no genuine question that they observed Williams drive away from a traffic stop before she was given permission.  On its face, that conduct violated section 316.1935, Florida Statutes.  But there is a genuine question whether the officers also had other information.  Williams raises a genuine question whether, by the time they sought charges against her, the

---

[3] The officers also maintain that they had at least arguable probable cause to arrest Williams. "[O]fficers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest." Kingsland, 382 F.3d at 1232. The doctrine of qualified immunity, however, does not operate as shield from state-law tort claims. See Jordan v. Moseley, 487 F.3d 1350, 1357 (11th Cir. 2007) (explaining that police officer's immunity on state-law claims derives from state law rather than qualified immunity).  And Williams' malicious prosecution claim is a state-law tort claim, not a federal claim under § 1983. (Doc. # 23, at 19.)

7

officers had been informed by Williams that she was pregnant, bleeding, and seeking emergency medical treatment. Moreover, the officers were aware that Williams had driven straight to a nearby hospital, had run into the emergency room, and had requested medical treatment. Finally, they learned from a nurse that Williams was indeed pregnant and in medical distress. Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Kingsland, 382 F.3d at 1226 (internal quotation marks omitted). All the facts presented to the officer must be considered; an officer may not ignore exculpatory facts and consider only inculpatory facts. Id. at 1229. If a reasonable person possessing all the information these officers allegedly possessed would have believed Williams' behavior was criminal, then probable cause is present.

Such a reasonable person could not have believed that Williams' actions were criminal. Under Florida law, a pregnant woman who out of necessity drives away from a traffic stop seeking urgent medical care in order to avoid imminent harm to her pregnancy does not commit the felony of driving away from a traffic stop or eluding an officer. Necessity, also called duress under Florida law, is a defense to prosecution for fleeing or eluding a

8

police officer. See Rowley v. State, 939 So. 2d 298, 300 (Fla. 4th DCA 2006) (noting that necessity, which is also called duress, is defense to prosecution for fleeing or eluding police officer, but concluding that defendant's facts were insufficient to make out the defense). The elements of the defense are,

> 1) the defendant reasonably believed that a danger or emergency existed that he did not intentionally cause; 2) the danger or emergency threatened significant harm to himself or a third person; 3) the threatened harm must have been real, imminent, and impending; 4) the defendant had no reasonable means to avoid the danger or emergency except by committing the crime; 5) the crime must have been committed out of duress to avoid the danger or emergency; and 6) the harm the defendant avoided outweighs the harm caused by committing the crime.

Driggers v. State, 917 So. 2d 329, 331 (Fla. 5th DCA 2005). An officer who has reasonably trustworthy information that a woman is pregnant and in medical distress, and who observes the woman proceed directly to a nearby hospital emergency room and there request emergency medical treatment, does not have probable cause to pursue a prosecution against her solely because he observed her drive away from a traffic stop without first receiving permission. Instead, the officer must also consider those facts of which he has reasonably trustworthy information that indicate the woman was acting under necessity. It is thus material whether the officers had reasonably trustworthy information as to these facts at the time they pursued charges against Williams. There is a genuine

question whether the officers possessed such information.[4] Consequently, summary judgment must be denied.

**B.   False Arrest Claim Against Sheriff Rutherford**

The sheriff argues that he is entitled to summary judgment on the false arrest claim because Officers Sirmons and Mills had probable cause to arrest Williams.  They had probable cause, according to the Sheriff, because they witnessed her run a red light, drive away from the traffic stop without permission, and resist Sirmons when he first attempted to arrest her.  Williams disagrees, maintaining that Sirmons and Mills did not conduct an investigation sufficient under the circumstances to determine whether or not probable cause was present.  As discussed above, Officers Sirmons and Mills cannot support a finding of probable cause merely by showing that they possessed facts which in a vacuum would give rise to probable cause.  Instead, the probable cause determination is made by viewing all the facts of which the officer has reasonably trustworthy information.  There is a genuine question as to whether the officers had reasonably trustworthy information on facts that would overbalance those facts tending toward probable cause.  Consequently, the Court cannot grant summary judgment for the sheriff on this claim.

---

[4]The officers do not argue that they considered but for some reason discounted the exculpatory information they received.

### C. Battery Claim Against Sheriff Rutherford

The sheriff submits that the officers did not commit battery in this case because they used only de minimis force to effect an arrest founded on probable cause. This force caused no injury to Williams. Williams acknowledges that a law enforcement officer can use force he reasonably believes necessary to prevent the escape of an arrestee. Williams maintains that there is a genuine question for the jury whether Sirmons and Mills reasonably believed the force they used was necessary to prevent Williams' escape.

Under Florida law, if a police officer uses excessive force to make an arrest, "the ordinarily protected use of force . . . is transformed into a battery." City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). The standard for excessive force under Florida law is similar to the standard for evaluating a claim of excessive force under § 1983. Thus, because the Court denies summary judgment on Williams' § 1983 excessive force claim against the officers as discussed below, the Court also denies the sheriff's motion for summary judgment on Williams' state-law battery claim.

### D. Section 1983 Excessive Force Claim Against Officers Sirmons and Mills

The officers argue that they are entitled to summary judgment on Williams' § 1983 excessive force claim for two reasons. First, the officers' use of force was reasonable under the circumstances. Second, the officers are entitled to qualified immunity because a

11

reasonable officer "could have believed their actions to be lawful and necessary based on the circumstances . . . ."  (Doc. # 15, at 23.)  Moreover, the officers used only de minimis force.  Williams responds that the force was unreasonable under the legal framework established by Graham v. Connor, 490 U.S. 386 (1989), to evaluate the reasonableness of force used to effect an arrest.

In Graham, the Supreme Court explained, "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  490 U.S. at 396 (internal quotation marks omitted).  To conduct this balancing, courts must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.  The evaluation must be made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.  And the evaluation must be tolerant of the fact that police officers often lack time for reflection before they act.  Id.  Finally, the evaluation is objective: an officer's subjective motivations are not considered.  Id.

12

The Eleventh Circuit has provided further relief to the Graham framework. In <u>Nolin v. Isbell</u>, the court explained that a policeman's use of de minimis force to effect a lawful arrest does not, by itself, "support a claim for excessive force in violation of the Fourth Amendment." 207 F.3d 1253, 1257 (11th Cir. 2000). In that case, the policeman threw a seventeen-year-old boy against a van a few feet away, pushed his knee into the boy's back, handcuffed the boy, and searched the boy's groin uncomfortably. <u>Id.</u> at 1255. The boy suffered bruising, but did not require medical treatment. <u>Id.</u> The appellate court concluded that this force was de minimis. <u>Id.</u> at 1258 n.4. "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." <u>Rodriquez v. Farrell</u>, 280 F.3d 1341, 1351 (11th Cir. 2002) (citing <u>Nolin</u>). Moreover, a common and accepted handcuffing technique is de minimis force even when it results in serious injury, so long as the officer who performed the handcuffing technique did not know that the technique would seriously aggravate a preexisting condition. <u>Id.</u> at 1351–53.

Were it not for the fact that Williams was pregnant and seeking emergency medical care in a hospital, the officers' conduct in this case would likely fall under the de minimis force rule. The defendants have not cited any case, however, holding that the application of what would otherwise be de minimis force to a particularly fragile arrestee benefits from the de minimis force

13

rule even if the officers knew the arrestee was particularly fragile. Indeed, the Eleventh Circuit has suggested that an officer's use of common force may be excessive when the officer has reason to know that the arrestee is particularly vulnerable. In Rodriquez, the court analyzed an officer's application of a common handcuffing technique to a recovering surgery patient. The technique ultimately resulted in the amputation of the patient's arm. Rodriquez, 280 F.3d at 1351. The court found particularly important the fact that the officer did not know about the arrestee's surgery and did not know that the handcuffing "would seriously aggravate the plaintiff's preexisting condition." Id. at 1352. Accordingly, the Eleventh Circuit in Rodriquez suggested that an officer's use of a common arrest technique may be excessive if the officer knew the arrestee was particularly likely to be harmed by the technique. There is at least a genuine question whether the officers knew Williams was pregnant and in medical distress, and was therefore particularly vulnerable to what would otherwise be de minimis force.[5] For that reason, the de minimis

---

[5]According to Williams, she told Officer Sirmons that she was pregnant when she was first stopped, and yelled the same thing when she arrived at the emergency room. Additionally, several witnesses affied that Williams was obviously pregnant. Finally, Williams was more than seven months pregnant. This record evidence eminently supports the inference that Sirmons and Mills were aware that Williams was pregnant. Moreover, Williams says that she told Officer Sirmons she needed medical care, Williams proceeded directly to the hospital, and Williams requested medical care at the hospital. This record evidence supports the inference that Sirmons and Mills were aware that Williams was in medical distress.

force rule does not cut the defendants off from potential liability for excessive force at this stage of the case.

Additionally, there is sufficient record evidence to justify the conclusion that Williams' arrest was not founded upon probable cause. Even de minimis force is inappropriate when used to make an arrest without probable cause. See Nolin, 207 F.3d at 1258 (distinguishing two cases in which the de minimis force rule was not applied, on basis that "both cases involved arrests without probable cause in which any use of force was inappropriate").

Consequently, the Court must analyze the force used under the Graham framework. The Court must evaluate the severity of the crime for which Williams was being arrested, whether Williams posed an immediate threat to the officers or others, and whether she was actively resisting or attempting to flee. The crimes for which Officers Sirmons and Mills arrested Williams were neither very severe nor very minor. This part of the analysis thus does not come out decidedly in favor of either side. Under Williams' version of the facts, however, the next two elements in the analysis both favor Williams. At the time Williams was arrested, she was stopped at two locked doors in the hospital emergency room requesting medical help. She was not holding a weapon. She was pregnant and slightly built. She had not made any aggressive

---

Accordingly, there is at least a genuine question as to whether Sirmons and Mills knew that Williams was particularly vulnerable to rough treatment.

15

movements or threats against anyone in the emergency room. And she faced two officers, each of whom was over six feet tall and weighed more than two hundred pounds. Objectively, then, Williams did not pose an immediate threat. Finally, though Williams had previously fled the officers, she was not actively attempting to flee at the moment she was arrested. Instead, she was simply in the emergency room facing locked doors and asking for medical help. Under these circumstances, Sirmons slammed Williams to the ground with such force that he dislocated his shoulder.[6] Then, Mills placed his full weight on the prone Williams and took his time handcuffing her.[7] If these are the facts Williams proves at trial, she will have demonstrated that the officers used unreasonable force to arrest her.[8]

The officers do not argue that there was no clearly established law prohibiting the use of unreasonable force at the

---

[6] The officers argue that Sirmons' dislocated shoulder was a result not of the force used to bring Williams to the ground but of Williams' resistance. The evidence on this is conflicting, though, (see, e.g., Doc. # 28-6, at 2) so the Court must presume Williams' evidence is true.

[7] Williams also suggests that Mills is liable for failing to intervene in Sirmons' use of force. Indeed, an officer is liable for failing to intervene in another officer's use of excessive force. Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000). This liability only arises, though, if the officer is in a position to intervene. Id. In this case, there is no suggestion that Sirmons' use of force lasted long enough to give Mills any opportunity to intervene.

[8] The officers paint quite a different picture, and it may well be that the evidence at trial bears out the officers' story.

time they arrested Williams. Instead, they argue that they are entitled to qualified immunity because a reasonable officer in their position could have believed the force they used was lawful and necessary. (Doc. # 15, at 23.) The Court rejects this argument. Under the Graham framework discussed above, the Court concludes that a reasonable officer faced with the circumstances described above could not have believed it lawful and necessary to use against a pregnant woman seeking medical treatment in an emergency room the force Sirmons and Mills allegedly used. Accordingly, Sirmons and Mills are not entitled to summary judgment on Williams' excessive force claim under § 1983.

### E.   Section 1983 Claim Against Sheriff Rutherford for Failure to Train Officers Sirmons and Mills

The sheriff argues that he is not liable for the officers' conduct because the Jacksonville Sheriff's Office properly trains its officers and has no policy or custom of tolerating false arrests or excessive force. (Doc. # 18, at 23.) According to the sheriff, this is demonstrated by the facts that the Jacksonville Sheriff's Office is a fully accredited law enforcement agency, and indeed disciplined its officers for the conduct in this case. (Doc. # 18, at 22-23.) In response, Williams argues weakly that the officers were not trained in the location of local hospitals. (Doc. # 24, at 13.) The failure to provide this training, Williams posits, amounted to deliberate indifference to the rights of

individuals in Williams' position.[9]  (Doc. # 24, at 13.)

A municipality[10] is not liable for the § 1983 violations of its employees if they were "implement[ing] or execut[ing] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell v. Dep't of Social Servs. of New York, 436 U.S. 658, 690 (1978).  A municipality will also be liable for § 1983 violations made pursuant to an unofficial governmental custom.  Id. at 691.  However, "a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Id.  Where the problematic governmental custom is a failure adequately to train police officers, the municipality will be liable "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton v. Harris, 489 U.S. 378, 388 (1989).  This analysis must focus on "adequacy of the training program in relation to the tasks the particular officers must perform."  Id. at 390.  Additionally, liability must not attach just because the "injury or

---

[9]The Court notes that Williams was unable to identify a custom of tolerating excessive force.  The sheriff disciplined these officers "well before this lawsuit was commenced . . . ."  (Doc. # 18, at 23.)  This strongly suggests that the sheriff is intolerant of excessive force.

[10]There is no argument that the claim against the sheriff in his official capacity is not a claim against a municipality.

accident could have been avoided if an officer had had better or more training . . . ." Id. at 391. Finally, "the identified deficiency in a . . . training program must be closely related to the ultimate injury." Id.

The sheriff's failure to train patrol officers on the location of local hospitals is an insufficient basis for § 1983 liability. That deficiency -- if it be a deficiency -- is not closely related to the excessive force allegedly used in this case. Williams theorizes that, had Sirmons and Mills known they were so close to the hospital, they would have escorted Williams there. (Doc. # 24, at 13.) Perhaps that is true. But the ultimate injury complained of was caused not by a delay in finding the hospital but by the officers' use of excessive force in the hospital. The causal chain connecting the training deficiency with the excessive force simply has too many links. It may well be that Sirmons and Mills did not offer to escort Williams to the hospital because they did not know where the hospital was. And it may well be that Williams only drove off because Sirmons and Mills did not offer to escort her to the hospital. And it may well be that the stress of chasing Williams contributed to the use of excessive force against Williams. This is an insufficiently close connection to justify the conclusion that the sheriff's failure to train patrol officers on the location of local hospitals represented deliberate indifference to the rights of those who may come into contact with

19

the officers.  For that reason, the Court grants summary judgment for the sheriff on the § 1983 claim against him.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

1.  The Motion for Summary Judgment (Doc. # 15) filed by Sirmons and Mills on February 25, 2008, is hereby DENIED.

2.  Defendant Sheriff John Rutherford's Motion for Summary Judgment (Doc. # 18), filed on February 28, 2008, is hereby GRANTED IN PART and DENIED IN PART.  Summary judgment is hereby granted in favor of Sheriff Rutherford on Williams' claim in Count V of the amended complaint (Doc. # 4) under 42 U.S.C. § 1983.  Summary judgment is denied as to all other claims in the amended complaint (Doc. # 4).

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this <u>27th</u> day of May 2008.

                                            VIRGINIA M. HERNANDEZ COVINGTON
                                            UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record